IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DELIGA MORENO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-cv-359-DES |
| ) | |
| LELAND DUDEK,[1] ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Delia Moreno ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but

---

[1] Effective February 17, 2025, Leland Dudek, Acting Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Although the claimant bears the burden of proof through step four, the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On February 6, 2012, Claimant protectively applied for disability insurance benefits under Title II of the Act. (R. 11, 124-29). Claimant alleges she has been unable to work since December 1, 2011, due to problems with her back, neck, and left knee; headaches; high blood pressure; acid reflux; diabetes; and anxiety. (R.126, 151). Claimant was 58 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 126, 938, 950). She has a high school education and past work as a production line assembler. (R. 936, 957, 993).

Claimant's claim for benefits was denied initially and on reconsideration, therefore she requested a hearing. (R. 65-70, 83). ALJ Bernard Porter conducted an administrative hearing and issued a decision on September 13, 2013, finding Claimant not disabled. (R. 11-64). The Appeals Council denied review, and Claimant appealed to the United States District Court for the Eastern District of Oklahoma. (R. 603-24). The Court reversed the ALJ's decision and remanded the case on September 28, 2016, with instructions to consider Listing 1.04. (R. 608-23). On remand, ALJ Doug Gabbard, II conducted a second administrative hearing and issued a decision on July 11, 2017, again finding Claimant not disabled. (R. 540-62, 632-41). Claimant filed written exceptions to this second unfavorable decision. (R. 707-11). On October 5, 2018, the Appeals Council reversed and remanded the ALJ's decision with instructions to consider Listing 1.04(A). (R. 650-51). On remand, ALJ Gabbard held a third administrative hearing and issued a decision on February 13, 2019, again finding Claimant not disabled. (R. 520-32, 563-89). Claimant filed written exceptions to this third unfavorable decision. (R. 783-92). The Appeals Council denied

review, and Claimant again appealed to the United States District Court for the Eastern District of Oklahoma. (R. 510-516, 1019-34). The Court reversed the ALJ's decision and remanded the case on March 25, 2022, with instructions to consider Dr. John Anigbogu's medical source opinion. (R. 1019-34). On remand, ALJ Michael Mannes held a fourth administrative hearing and issued a decision on March 29, 2023, once again finding Claimant not disabled. (R. 923-38, 948-1000). Claimant filed written exceptions to this fourth unfavorable decision. (R. 1131-34). On August 17, 2023, the Appeals Council determined Claimant's written exceptions did not provide a basis for changing the ALJ's decision, rendering ALJ Mannes's March 29, 2023, decision the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.984(b)(2). Claimant filed this appeal on October 23, 2023.  (Docket No. 2).

### III.   The ALJ's Decision

In his decision,  ALJ Mannes found Claimant last met the insured requirements for Title II purposes on December 31, 2016. (R. 925). The ALJ then found at step one that Claimant had not engaged in substantial gainful activity during the period from her alleged onset date of December 1, 2011, through her date last insured of December 31, 2016. (R. 926). At step two, the ALJ found Claimant had severe impairments of lumbar and cervical spine disorder, dysfunction of major joints, and asthma. (*Id*.). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 928-29).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) with the following non-exertional limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds. [T]he claimant can occasionally climb stairs and ramps. [T]he claimant is limited to frequent balancing, stooping, kneeling, crouching, and crawling. [T]he claimant can frequently reach, handle, and finger bilaterally. [T]he claimant must avoid frequent exposure to dusts,

   fumes, gases, odors, and pulmonary irritants. The claimant must avoid all exposure to unprotected heights and occasional exposure to vibrations. [T]he claimant must avoid frequent exposure to loud noise.

(R. 929). The ALJ provided a summary of the evidence that went into this finding. (R. 929-36).

  At step four, the ALJ concluded that Claimant could not return to her past relevant work. (R. 936). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including housekeeping cleaner, routing clerk, and marker. (R. 936-37). Accordingly, the ALJ concluded Claimant was not disabled. (R. 937).

## IV. Issues Presented

  Claimant asserts the ALJ erred by: (1) evaluating her musculoskeletal impairments using Listings 1.15, 1.16, and 1.18 (Docket No. 9 at 3); (2) failing to properly evaluate Dr. John Anigbogu's medical source opinion regarding Claimant's ability to stand and walk (*Id.* at 3-5); and (3) failing to properly evaluate her subjective symptoms (*Id.* at 5-6). The Court finds no reversible error in the ALJ's decision.

## V. Analysis

###   A. Application of Former Listing 1.04

  In a largely undeveloped and conclusory argument, Claimant asserts the ALJ erred by applying Listings 1.15, 1.16, and 1.18, which were not in effect at the time of Claimant's application, rather than applying Listing 1.04, which was. Claimant's argument is unpersuasive.

  At step three of the sequential evaluation, the ALJ considers whether a claimant's severe impairment(s) meets or medically equals one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(iii), 20 C.F.R. Pt. 404, Subpt. P., App. 1. Listed impairments are "conclusively presumed to be

disabling." *Lax,* 489 F.3d at 1085 (quotation omitted). Thus, if a claimant's medically severe impairment(s) meets or equals one of the listed impairments, she will be found disabled without considering her age, education, and work experience. 20 C.F.R. § 404.1520(d). In order to meet a listing, the claimant's impairment(s) must satisfy all of the criteria of that listing. 20 C.F.R. § 404.1525(c)(3). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

At step three, the ALJ considered whether Claimant's impairments met or medically equaled Listings 1.15, 1.16, and 1.18, which apply to musculoskeletal disorders, and ultimately concluded that Claimant did not have an impairment or combination of impairments that "would even closely match the description of listings 1.15, 1.16, and 1.18." (R. 928-29). In reaching this conclusion, the ALJ acknowledged Dr. Wilson's opinion that Claimant met the requirements of Listing 1.04(A) as well as Dr. Anigbogu's opinion that she did not; however, the ALJ assigned these opinions "limited weight" since they were based on the "old musculoskeletal listings." (R. 929).

Claimant asserts that Listings 1.15, 1.16, and 1.18 were not the appropriate listings to consider because they were implemented after her application date and after the Appeals Council's October 2018 remand which instructed the ALJ to consider Listing 1.04(A).[2] The Court disagrees and finds that the ALJ considered the proper listings. First, when the Social Security Administration revised the listings for musculoskeletal disorders, it provided that the rules would

---

[2] Claimant asserts that "all of the decisions and evidence in this claim are directed" to Listing 1.04, but this is not an accurate account of the history of this claim. Notably, this Court's order dated September 28, 2016, as well as the Appeals Council's order dated October 5, 2018, <u>did</u> instruct the ALJ to consider Listing 1.04 (R. 608-23, 650-51). However, this Court's order dated March 25, 2022, did not. In that order, the ALJ was instructed to consider Dr. Anigbogu's opinion regarding Claimant's standing and walking limitations, not Listing 1.04 as Claimant suggests. (R. 1019-34). The Court does not appreciate counsel's lack of candor here, especially considering Claimant's argument is otherwise entirely undeveloped.

become effective on April 2, 2021. 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020). The Agency then explained: "When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." *Id.* Thus, under the Agency's own policies, the ALJ applied the correct listings. Second, Claimant's inability to rely on Listing 1.04 is not dispositive of her claim for disability. Although she is precluded from a determination that she is <u>presumptively</u> disabled at step three, she is not precluded from demonstrating that she is nevertheless disabled at steps four and five. Furthermore, Claimant does not cite any case law, nor has this Court been able to find any, suggesting the older listing should apply. Finally, Tenth Circuit case law suggests otherwise. *See Chapo v. Astrue,* 682 F.3d 1285, 1291 (10th Cir. 2012) ("We refer to the regulations in effect at the time of the ALJ's decision."). Therefore, because Listings 1.15, 1.16, and 1.18 were in effect at the time of the ALJ's decision, the ALJ did not err by applying them.

    **B.**    **Dr. Anigbogu's Standing and Walking Limitations**

For claims filed before March 27, 2017, the weight given to a medical opinion depends, in part, on its source. *See* 20 C.F.R. § 404.1527(c). Medical opinions from sources who examined the claimant, such as consultative examiners, generally receive more weight than non-examining medical sources. 20 C.F.R. § 404.1527(c)(1). Nonetheless, the ALJ must "consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) (citation omitted). Those factors are: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship and frequency of examination; (3) the degree to which the medical source provides relevant evidence to support the opinion; (4) the opinion's consistency with the record as a whole; (5) the medical source's specialization; and (6) any other factors that may support or contradict the opinion. 20 C.F.R.

§ 404.1527(c)(1)-(6). When evidence is inconsistent, the ALJ has the discretion to weigh the conflicting evidence to determine whether the claimant has shown she is disabled. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.1520b(b). The ALJ's findings are conclusive when they are supported by substantial evidence. 42 U.S.C. § 405(g).

On November 28, 2018, Dr. Anigbogu completed a form titled "Medical Statement of Ability to Do Work-Related Activities (Physical)," wherein he opined, *inter alia*, that Claimant could stand for three hours at a time without interruption for a total of three hours in an eight-hour work day and could walk for three hours at a time without interruption for a total of three hours in an eight-hour work day. (R. 907). Although Dr. Anigbogu was instructed to identify the medical or clinical findings that supported these limitations, he cited none. *Id.* Likewise, Dr. Anigbogu did not indicate the time period for which these limitations applied, when they were first present, or if they would last twelve consecutive months, despite being prompted to do so. (Tr. 911).

In his written opinion, the ALJ thoroughly recounted Dr. Anigbogu's opinion regarding Claimant's standing and walking limitations and noted that Dr. Anigbogu was a medical expert familiar with social security regulations and had the opportunity to review the medical evidence of record. (R. 933-34). The ALJ then rejected Dr. Anigbogu's standing and walking limitations, finding such limitations were inconsistent with: (1) Claimant's self-reported ability to walk a mile; (2) the mild to moderate degenerative changes noted in the MRI imaging; (3) the largely normal physical examination findings of record, including a normal gait and Claimant's ability to ambulate without an assistive device; (4) Claimant's use of over-the-counter pain medication; (5) Claimant's daily activities; (6) the minimal limitations identified by Claimant's primary care providers; and (7) Claimant's two-year gap in treatment during the adjudicative period. (R. 933).

Despite the ALJ's detailed analysis, Claimant nonetheless asserts the ALJ failed to provide a legitimate rationale for rejecting Dr. Anigbogu's standing and walking limitations. (Docket No. 9 at 3-5). The Court finds the ALJ applied the correct legal standards and his decision to reject Dr. Anigbogu's opinions is supported by substantial evidence.  First, Claimant specifically asserts the ALJ "picked one comment from the record in 2022" to discount Dr. Anigbogu's standing and walking limitations. This argument is belied by the record. As set forth above, the ALJ provided numerous reasons, supported by the record, for rejecting Dr. Anigbogu's standing and walking limitations and concluding instead that Claimant could stand and/or walk six hours in an eight-hour workday instead. (R. 933-34).

Claimant further contends the ALJ ignored her report to her mental health provider that increased walking caused intermittent numbness and tingling in her left foot. (Docket No. 9 at 4). It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to h[is] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). However, the ALJ is not required to discuss each piece of evidence in the record in detail. *See id.* at 1009-10. ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Although the ALJ did not specifically reference this particular treatment note, he did note Claimant's testimony that she experiences neuropathy and paresthesia. (R. 926). Claimant fails to explain how this single report of intermittent numbness and tingling in her left foot with increased walking to her mental health provider demonstrates greater RFC limitations than the

ALJ identified. Because Claimant points to no evidence the ALJ failed to consider, her arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted)).

In any event, Dr. Anigbogu's opinion is consistent with the requirements of light work because he found Claimant could stand for three hours <u>and</u> could walk for three hours, *i.e.*, a combined total of six hours. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Thus, the ALJ found Dr. Anigbogu's specific standing and walking limitations unpersuasive but adopted his opinion that Claimant could perform light work. "It is not error for the ALJ to credit a portion of a medical opinion and discount other portions of the opinion." *Jones v. Astrue*, 500 F.Supp 2d 1277, 1285 (D. Kan 2007). Accordingly, the ALJ's RFC limiting Claimant to a limited range of light work is supported by substantial evidence.

**C.     ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms**

Claimant next contends the ALJ erred in evaluating her subjective symptoms, specifically arguing the ALJ improperly discounted her symptoms based on her ability to work beyond her alleged onset date, her failure to take prescription medication, and her failure to seek treatment. (Docket No. 9 at 5-6).

The ALJ is required to consider Claimant's subjective complaints, or symptoms[3] in determining the RFC.  20 C.F.R. § 404.1529(a) & (d)(4).  The Commissioner uses a two-step process when evaluating a claimant's symptoms.[4]  SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged.  SSR 16-3p at *3.  Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's ability to work.  *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to the symptoms.  *Id.* at *7-8.  The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ's decision "must contain specific reasons for the weight given to the individual's

---

[3] Symptoms mean a claimant's "own description of [her] physical or mental impairment." 20 C.F.R. § 404.1502(i).

[4] Tenth Circuit precedent characterizes this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom was in fact disabling.  *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)).  The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*.  *Paulek v. Colvin,* 662 F. App'x 593-94 (10th Cir. 2016) (unpublished).  However, the term "credibility" is no longer used.  SSR 16-3p at *2.  For purposes of this opinion, the Court will refer to the process as a "consistency analysis."

symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

In his written decision, the ALJ summarized Claimant's Function Report, administrative hearing testimony from multiple hearings, the Third-Party Function Report completed by Claimant's sister, and the objective medical evidence. (R. 926-36). The ALJ found Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (R. 930). In reaching this conclusion, the ALJ discussed numerous inconsistencies between Claimant's subjective complaints and the evidence of record, including: (1) Claimant's report that she stopped working in 2011 because her employer closed, rather than due to her impairments; (2) negative x-rays of Claimant's back immediately after her accident; (3) treatment notes showing Claimant improved with physical therapy; (4) Claimant's ability to work after her alleged onset date; (5) primary care records showing consistently normal physical examination findings; (6) the lack of significant findings on Claimant's lumbar and cervical MRIs; (7) the absence of surgical intervention, emergent care, or hospitalization; (8) the effectiveness of conservative treatment; (9) the lack of a recommendation for an assistive device; (10) the absence of specialized orthopedic treatment after July 2012; (11) Claimant's limited medical treatment since 2014; and (12) Claimant's daily activities as reported on her Function Report, at the administrative hearing, and to Dr. Anigbogu. (R. 929-32).

Claimant asserts the ALJ improperly discounted her subjective symptoms based on her ability to work beyond her alleged onset date. In essence, Claimant asserts the ALJ ignored that her earnings after her alleged onset date in 2011 were $6,000.00 less than her earnings in 2010 before her accident. As an initial matter, the Court notes that a claimant's ability to work after the alleged onset date and the reasons for termination of such employment are relevant considerations in a consistency analysis. *See, e.g., Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (finding ALJ properly considered that "claimant readily admits she did not leave employment as a result of any health-related impairment" in the consistency analysis). At the administrative hearing, Claimant herself testified that her reduction in pay was attributable to both being offered fewer hours due to the impending shut down of the business as well as her inability to work as many hours as she was able to work before her accident. (R. 990). Moreover, the ALJ specifically noted that "[a]lthough [Claimant] returned to work in 2011, she did not work full hours." (R. 929). Thus, the ALJ was clearly aware that Claimant was not working the same number of hours after her alleged onset date as she was working before her accident. The Court finds ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, SSR 16-3p, and the regulations. Claimant simply disagrees with the ALJ's interpretation of the evidence. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan,* 552 F.3d at 1185 (10th Cir. 2008). Moreover, even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.* Claimant's arguments again amount to a request that the Court reweigh the evidence and interpret it in her favor, which the Court cannot do. *Hackett,* 395 F.3d at 1172.

Claimant further asserts the ALJ improperly discounted her symptoms based on her use of over-the-counter medication and failure to seek medical care. (Docket No. 9 at 6). Although the ALJ's use of this reasoning is questionable, the decision makes clear that the ALJ did not base his entire consistency analysis on these reasons alone. As set forth above, the ALJ provided numerous <u>other</u> reasons supported by the record to discount Claimant's subjective symptoms, which Claimant does not challenge, and the balance of the consistency analysis is thus supported by substantial evidence. *See, e.g., Branum v. Barnhart,* 385 F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's [consistency] analysis is supported by substantial evidence in the record.").

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 20th day of March, 2025.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE